# EXHIBIT A

Daryl J. Reese (SBN #298780)
DARYL REESE LAW GROUP PC
3843 Brickway Blvd. Ste 204
Santa Rosa, CA 95403
*tel* (707) 858-5000
*fax* (707) 851-0858
daryl@darylreeselaw.com

Attorney for PLAINTIFF
CALIFORNIA DEER ASSOCIATION

**FILED**

MAY 3 0 2025

**SHASTA COUNTY SUPERIOR COURT**
**BY: C. WEST, DEPUTY CLERK**

435

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF SHASTA

| | |
|---|---|
| CALIFORNIA DEER ASSOCIATION, a California Nonprofit Public Benefit Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES DALE MACDOUGALL, CANDACE LEONG, JEFFREY JAKE BARLOW, CHERISE MACDOUGALL, JOSHUA JULIEN, PATRIOT RESTORATION SYSTEMS, INC., PATRIOT RESTORATION OPS, and DOES 1-25,<br><br>Defendants, | Case No.  **207822**<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1. Breach of Fiduciary Duty<br>2. Breach of Duty of Loyalty<br>3. Breach of Contract<br>4. Intentional Interference with Contractual Relations<br>5. Intentional Interference with Prospective Economic Advantage<br>6. Negligent Interference with Economic Advantage<br>7. Conversion<br>8. Intentional Tort<br>9. Intentional Misrepresentation (Fraud)<br>10. Negligent Misrepresentation<br>11. Concealment<br>12. Constructive Fraud<br>13. Unjust Enrichment<br>14. Misappropriation of Trade Secrets<br>15. Unfair Competition<br>16. Violation of California State False Claims Act<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff California Deer Association ("CDA"), a California Nonprofit Public Benefit Corporation and leading wildlife conservation organization with over 25 years of demonstrated excellence in conservation management and stewardship of public grant funds, brings this action

1

against Defendants James Dale MacDougall ("MacDougall"), Candace Leong ("Leong"), Jeffrey Jake Barlow ("Barlow"), Cherise MacDougall ("Cherise"), Joshua Julien ("Julien"), Patriot Restoration Systems, Inc. ("PRS"), Patriot Restoration Ops ("PROPS"), and Does 1–25 (collectively "Defendants") for their systematic, deliberate, and malicious scheme to misappropriate CDA's business opportunities, confidential information, trade secrets, and resources through fraud and deception, and allege as follows:

## PARTIES

1.      Plaintiff CDA is and was, at all relevant times herein, a California Nonprofit Public Benefit Corporation headquartered in Redding, CA.

2.      Defendants MacDougall, Leong, Barlow, Cherise, and Julien are and were, at all relevant times herein, residents of Shasta County, California, and were employed within Shasta County.

3.      Defendant PRS is and was, at all relevant times herein, a California Corporation headquartered in Redding, CA.

4.      Defendant PROPS is and was, at all relevant times herein, a California Nonprofit Corporation headquartered in Redding, CA, formed on or about August 10, 2022, California Secretary of State Entity Number 5196715.

5.      Plaintiff is currently unaware of the true names and capacities of defendants sued herein as DOES 1–25 and therefore sues these defendants by such fictitious names pursuant to California Code of Civil Procedure §. 474. Plaintiff will amend this Complaint to allege their true identities and capacities when ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of these fictitiously named defendants is responsible in some manner for the occurrences alleged herein and thereby proximately caused Plaintiff's injuries alleged herein.

6.      Plaintiff is informed and believes, and on that basis alleges, that, at all relevant times, each of the defendants was the agent or employee of each of the remaining defendants, and, in doing the things herein alleged, was acting within the course and scope of such agency or employment, and that Defendants authorized ratified, and approved, expressly or implicitly, all of the conduct alleged herein.

///

2

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the parties and claims involved in this action pursuant to Section 10 of Article VI of the California Constitution because the acts and omissions complained of herein took place, at least in part, in California and involved California residents. The amount of damages sought falls within the unlimited jurisdiction of this Court because the amount in controversy substantially exceeds $25,000, the jurisdictional minimum for unlimited civil cases in California.

8.    Venue is proper in this Court pursuant to California Code of Civil Procedure section 395(a) because each individual defendant resides in Shasta County and pursuant to section 395.5 because Defendants PRS and PROPS's principal place of business is, in part, in Shasta County and because the events that give rise to the causes of action alleged herein occurred primarily in Shasta County.

## FACTUAL ALLEGATIONS

### BACKGROUND

9.    Since October 1996, Plaintiff CDA has been a preeminent and nationally recognized nonprofit wildlife conservation organization whose principal mission is to improve California deer herds and other wildlife through direct financial support for habitat improvement, education, and research projects, establishing itself as the leading authority in wildlife conservation management in California. Through its demonstrated excellence and commitment to conservation, CDA has become one of the fastest-growing and most trusted conservation organizations in California, with more than 21 chapters, 5,000 members, and a proven track record of successfully managing millions of dollars in conservation grants and projects.

10.    As part of CDA's core business operations and protected trade secrets, the organization secures and manages substantial grant agreements and stewardship agreements with federal and California State agencies for the restoration of public lands, utilizing proprietary methods, relationships, and processes developed over 25 years of operations. CDA expertly handles all aspects of coordinating and administering these agreements, maintains critical relationships with government agencies, and carefully oversees subcontracted fieldwork to ensure full compliance with agreement objectives and the highest standards of conservation work.

3

11. MacDougall was employed with CDA as Project Manager from October 2016 until his resignation on May 31, 2024. During that time, he held a position of highest trust and fiduciary responsibility as Project Manager, with extensive access to and control over CDA's most sensitive confidential information, trade secrets, strategic relationships, government agency partnerships, and core business operations. His annual compensation of $100,000 reflected this senior role and the corresponding fiduciary obligations he owed to CDA.

12. MacDougall incorporated the for-profit entity PRS on September 12, 2020. He is the controlling shareholder, director, and executive officer. CDA contracted with PRS to do fieldwork starting in September 2020.

13. MacDougall incorporated the nonprofit entity PROPS on August 10, 2022. He is the controlling director and executive officer.

14. Leong was employed with CDA as Grant Administrator from March 2020 until her termination on August 7, 2024. Leong was responsible for identifying potential grant funding sources, managing the grant application process, monitoring awarded grants to ensure compliance with guidelines, and submitting required reports and billings to funders throughout the grant lifecycle. Her annual salary ranged from $85,000 to $90,000. Upon information and belief, Leong began working for PRS immediately after her termination from CDA.

15. Barlow worked for CDA as an employee from May 2017 to July 2021 and as a contractor from July 2021 until the termination of his contract on August 7, 2024. He was responsible for grant administration and project leadership for stewardship agreements. His annual pay ranged from $62,200 to $78,000.

16. Cherise was employed with CDA from November 2021 until her termination on August 7, 2024. She started in the role of Communications Manager and later became Assistant to her father, defendant MacDougall. Her annual salary was around $58,240. Upon information and belief, she began working for PRS immediately after her termination. Cherise has wrongfully retained possession of a laptop computer owned by CDA, containing confidential and proprietary information, in violation of California Penal Code § 496 and Civil Code § 3336. Despite multiple written demands for its return, she has refused to return the device, in breach of her contractual and

4

legal obligations.

17.     Julien was employed with CDA as Project Manager from July 2023 until his termination on August 7, 2024. His annual salary was about $68,410.

18.     At the commencement of their employment with CDA, each defendant employee expressly acknowledged receipt of, and agreed in writing to be legally bound by, CDA's Employee Handbook. The Handbook establishes binding contractual obligations, including but not limited to: (1) employees shall not conduct personal business or business for another employer during their scheduled working hours; (2) employees must maintain strict confidentiality of CDA's trade secrets and other proprietary information, including all non-public information about suppliers, business partners, customers, and business operations; and (3) employees must avoid any situations involving actual or potential conflicts of interest, including any direct or indirect business involvement with a competitor or supplier of CDA's. These obligations survive termination of employment indefinitely with respect to trade secrets under the California Uniform Trade Secrets Act (Civil Code § 3426 et seq.) and other confidential information to the fullest extent permitted by law, including but not limited to protection of trade secrets under the California Uniform Trade Secrets Act.

### DIVERSION OF GRANT AWARDS

19.     While they were employed with, receiving compensation from, and owing fiduciary duties to CDA, defendants MacDougall, Leong, Barlow, Cherise, and Julien secretly and wrongfully applied for and obtained grants and stewardship agreements (collectively "grants") for PROPS instead of CDA, in direct violation of their fiduciary duties and employment obligations. These were the same grants for which CDA had paid and entrusted Defendants to obtain exclusively on behalf of CDA, and for which Defendants had explicit contractual and fiduciary obligations to pursue solely for CDA's benefit. Defendants applied for these grants during their work hours for CDA and utilized CDA's proprietary and trade secret information in doing so. They drafted these applications with CDA's name on them and then substituted in PROPS' name upon their filing. Had Defendants focused their efforts on obtaining these grants for CDA, CDA would have received them. Indeed, CDA had historically obtained these same grants.

5

20.    Between May 2023 and September 2024, PROPS was awarded at least $40,366,400 in federal and state grants, with the exact amount to be proven at trial, which were obtained through the misappropriation of CDA's proprietary information, methodologies, and relationships. Three of these grants, totalling $14,077,900, involve work in California that falls squarely within CDA's operational geography. CDA would have been awarded these grants had Defendants applied for these grants on behalf of CDA rather than PROPS. Instead, no new grants have been awarded to CDA since May 2024. The entire nature and extent of the diversion of grant awards are not yet known but are currently under investigation.

21.    As a California non-profit organization, CDA receives 10% of the grant funds as essential compensation for its specialized administrative services and expertise, which funds are required to be reinvested in the organization's conservation mission pursuant to its charitable status. Through their willful and malicious conduct, Defendants have deliberately misappropriated at least $1,407,790 in direct earnings from CDA, while also causing substantial and ongoing damages, including but not limited to: loss of future grant opportunities, irreparable damage to long-standing relationships with funding agencies, severe harm to CDA's reputation and goodwill within the conservation community, and diminished ability to fulfill its charitable mission.

22.    On June 3, 2024, CDA's current Board President, Kolton Hawkins, discovered that PROPS had obtained a grant for work in California. Hawkins informed CDA's current CEO, Chris Hall, of this information.

23.    On June 4, 2024, during CDA's regularly scheduled board meeting, MacDougall, while serving as an officer and fiduciary of CDA and receiving compensation and benefits from CDA, knowingly, intentionally and with fraudulent intent made materially false statements to the board in violation of his fiduciary duties under California Corporations Code § 309. Specifically, when directly asked by CEO Hall whether PROPS had applied for any funding in California, MacDougall emphatically and knowingly made the materially false statement, "Absolutely Not!" At the time of this statement, MacDougall had already secretly obtained over $14 million in grant funding for PROPS for work in California, facts that he deliberately concealed from CDA's board in direct violation of his fiduciary duties of loyalty, care, and candor. MacDougall's false statement was

6

made with the specific intent to deceive CDA's board and further his scheme to misappropriate CDA's business opportunities.

24. After a preliminary investigation, CDA discovered that defendants Leong, Barlow, Cherise, and Julien had each assisted in MacDougall's scheme to divert grant awards to PROPS. CDA terminated their employment on August 9, 2024.

## BILLING FRAUD

25. On numerous occasions, MacDougall knowingly and intentionally submitted fraudulent invoices and collected federal funds for work that was associated with CDA grants but was never actually completed, in direct violation of 18 U.S.C. § 1001 (false statements), California Penal Code § 484 (theft by false pretenses), and California Government Code § 12651 (false claims). For example, MacDougall submitted a materially false invoice in May 2024 to the U.S. Forest Service for $150,000 for controlled burning work that was never performed. The Forest Service subsequently had to undertake the work themselves and demanded reimbursement from CDA for the fraudulent invoice. The full extent of such systematic fraudulent billing is currently under investigation. To date, CDA has been required to reimburse government grant providers approximately $282,000 for MacDougall's intentionally fraudulent billing practices.

## CONVERSION OF TIMBER CREDITS

26. Defendants MacDougall and PRS have wrongfully misappropriated and converted CDA's valuable timber credits to harvest and sell timber for their own personal financial gain, deliberately concealing these activities from CDA and retaining all profits in violation of their fiduciary duties and contractual obligations. While the full scope of this systematic misappropriation is still being investigated, preliminary evidence indicates substantial unauthorized use of CDA's timber credits, resulting in significant financial damages to CDA in an amount potentially up to $15 million.

## DIVERSION OF NRCS/USDA FUNDS

27. Defendants MacDougall and PRS have knowingly, intentionally, and maliciously misappropriated and diverted substantial federal funds intended for CDA under the National Resources Conservation Service (NRCS), a division of the U.S. Department of Agriculture (USDA), in violation of 18 U.S.C. § 666 (theft concerning programs receiving federal funds),

7

California Penal Code § 484 (theft), and California Government Code § 12650 et seq. (California False Claims Act). Specifically, MacDougall exploited and abused CDA's longstanding relationships and credibility with landowners and USDA to orchestrate a systematic scheme to misappropriate and fraudulently redirect federal conservation funds for his and PRS' illegal financial gain, all while deliberately concealing these actions from CDA through material misrepresentations and omissions.

28.    Under NRCS programs, the federal government provides significant financial assistance to landowners for conservation and restoration projects. Landowners in California collaborated with CDA through MacDougall, who was then acting as CDA's authorized representative, to prepare a scope of work for NRCS funding. After the funding was secured, MacDougall, without CDA's knowledge or authorization, engaged PRS workers and other contractors to complete the job, deliberately excluding CDA from the process, thereby violating his duties and obligations to CDA. MacDougall's actions constituted violations of 18 U.S.C. § 666 (theft/bribery concerning programs receiving federal funds), California Penal Code § 484 (theft), California Civil Code § 2322 (authority of agents), and other federal and state laws, by misrepresenting his authority and relationship with CDA, which resulted in the diversion of funds. MacDougall, in violation of his fiduciary duties to CDA and federal regulations governing NRCS payments, fraudulently induced landowners to sign Assignment of Payment forms directing federal funds into accounts secretly controlled by him or other Defendants, circumventing both the required deposit into landowners' accounts and CDA's rightful involvement in the process. Landowners' funds went to the contractor, so the landowners never realized they were not actually working with CDA because MacDougall was the representative. Through this fraudulent scheme, MacDougall deliberately created the false impression that CDA was the lead organization for these projects, thereby exposing CDA to potential liability and damages, while simultaneously depriving CDA of its rightful role and compensation in these NRCS-funded projects. As a direct result of MacDougall's fraudulent scheme, CDA has suffered substantial monetary damages due to the loss of rightful project compensation and faces significant potential liability resulting from MacDougall's unauthorized representations to landowners regarding CDA's role in completing the conservation work using

8

assigned NRCS funds.

29.    In one egregious instance, MacDougall fraudulently leased portions of a landowner's property while falsely representing himself as an authorized agent of CDA. He then secured two separate NRCS grants through deceptive means, one in his name and one under the landowners, totaling approximately $900,000 in misappropriated NRCS funding from just that one landowner. The funds were received with CDA's guidance, but the work will not be contracted with CDA to fulfill the scope of work. To carry out this scheme, MacDougall and other Defendants used CDA's name, logo, trucks, personnel, materials, and other means to create the false impression that landowners were contracting with and assigning funds to CDA, thereby inducing them to enter into agreements and transfer funds under false pretenses.

30.    While discovery of the full scope of this systematic misappropriation is ongoing pursuant to California Code of Civil Procedure § 2017.010, preliminary evidence indicates substantial unauthorized use of CDA's timber credits and diversion of NRCS funds. As a direct result, CDA has been left financially responsible for conservation and timber-related work for which it was never compensated, while MacDougall and PROPS wrongfully profited from misappropriated federal funds and timber credits. The total damages arising from this deliberate and fraudulent conduct are estimated to exceed $15 million, including funds diverted from multiple landowners and projects, plus additional damages for harm to CDA's reputation and its relationships with USDA, NRCS, and landowners.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Defendants MacDougall, Leong, Barlow, Cherise, and Julien)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

31.    Defendants' conduct, as alleged herein, constitutes an egregious, willful, and malicious breach of fiduciary duty, committed with the specific intent to defraud CDA through a pattern of deceptive practices and self-dealing for Defendants' personal financial enrichment, in violation of their highest duties of loyalty, care, and candor. As a direct and proximate result of Defendants' intentional and fraudulent conduct, Plaintiff has suffered substantial economic damages,

9

reputational harm, and loss of business opportunities, entitling Plaintiff to compensatory damages, punitive damages of at least three times compensatory damages, and disgorgement of all ill-gotten gains as prayed for herein below.

## SECOND CAUSE OF ACTION

### Breach of Duty of Loyalty

### (Defendants MacDougall, Leong, Barlow, Cherise, and Julien)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

32.    Defendants' conduct, as alleged herein, constitutes a breach of their duty of loyalty to CDA. As a direct result, Plaintiff has been injured and is entitled to relief as prayed for herein below.

## THIRD CAUSE OF ACTION

### Breach of Contract

### (Defendants MacDougall, Leong, Barlow, Cherise, and Julien)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

33.    Defendants' conduct, as alleged herein, constitutes a breach of contract as set forth in the Employee Handbook, including but not limited to violations of confidentiality provisions, duty of loyalty obligations, and prohibited conduct regarding the handling of company funds and resources. As a direct result, Plaintiff has been injured and is entitled to relief as prayed for herein below.

## FOURTH CAUSE OF ACTION

### Intentional Interference with Contractual Relations

### (All Defendants)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

34.    Defendants' conduct, as alleged herein, constitutes intentional interference with contractual relations through their knowing, willful, and malicious actions to disrupt Plaintiff's existing contractual relationships, including but not limited to relationships with grantors, contractors, business partners, and other third parties with whom Plaintiff had valid and enforceable contracts at the time of Defendants' interference. Defendants knew of these contracts and deliberately acted to disrupt them without justification or privilege. As a direct and proximate result of Defendants' independently wrongful acts, Plaintiff has suffered substantial economic damages under California

10

Civil Code § 3333 and is entitled to relief as prayed for herein below.

## FIFTH CAUSE OF ACTION

### Intentional Interference with Prospective Economic Advantage

### (All Defendants)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

35.    Defendants' conduct, as alleged herein, constitutes intentional interference with prospective economic advantage through independently wrongful acts, including misappropriation of trade secrets and fraudulent misrepresentations, designed to disrupt Plaintiff's probable future economic relationships, from which Plaintiff had a reasonable probability of future economic benefit. As a direct and proximate result, Plaintiff has suffered substantial economic damages and lost business opportunities and is entitled to relief as prayed for herein below.

## SIXTH CAUSE OF ACTION

### Negligent Interference with Economic Advantage

### (All Defendants)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

36.    Defendants' conduct, as alleged herein, constitutes negligent interference with economic advantage through their failure to exercise reasonable care in their business dealings, resulting in the disruption of Plaintiff's economic relationships and opportunities. As a direct and proximate result of Defendants' negligent conduct, Plaintiff has suffered substantial economic damages and lost business opportunities and is entitled to relief as prayed for herein below.

## SEVENTH CAUSE OF ACTION

### Conversion

### (Defendants MacDougall and PROPS)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

37.    Defendants' conduct, as alleged herein, constitutes wrongful conversion through their deliberate, substantial, and unauthorized exercise of dominion and control over Plaintiff's property, in violation of California Civil Code § 3336, including but not limited to funds, assets, and business opportunities, in conscious disregard of Plaintiff's rights. As a direct and proximate result of

11

Defendants' wrongful conversion, Plaintiff has suffered substantial damages and is entitled to compensatory and punitive relief as prayed for herein below.

## EIGHTH CAUSE OF ACTION

### Intentional Tort

### (All Defendants)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

38.   Defendants' conduct, as alleged herein, constitutes multiple intentional torts committed with malice, oppression, and fraud as defined by California Civil Code § 3294, including but not limited to conversion, misappropriation, and intentional interference with economic relations. These intentional wrongful acts were committed with full knowledge of and conscious disregard for Plaintiff's rights. As a direct and proximate result, Plaintiff has suffered substantial damages and is entitled to compensatory and punitive relief as prayed for herein below.

## NINTH CAUSE OF ACTION

### Intentional Misrepresentation (Fraud)

### (Defendant MacDougall)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

39.   Defendants' conduct, as alleged herein, constitutes intentional misrepresentation (fraud) through knowing and deliberate false representations of material facts, made with intent to deceive and induce Plaintiff's reliance. These misrepresentations included false statements about MacDougall's authority to redirect NRCS funds, his relationship with CDA, and the nature of the conservation work being performed, which Defendants knew were false when made. Plaintiff reasonably relied on these misrepresentations to its detriment, as it had no reasonable means of discovering the truth. As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff has suffered substantial economic damages and is entitled to compensatory, consequential, and punitive damages as prayed for herein below.

## TENTH CAUSE OF ACTION

### Negligent Misrepresentation

### (Defendant MacDougall)

12

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

40.    of material facts Defendants' conduct, as alleged herein, constitutes negligent misrepresentation in violation of California Civil Code section 1710(2), including their false assertions made without reasonable grounds for believing them to be true, which Defendants had a duty to verify before making such representations, and which were made with conscious disregard for CDA's rights and interests. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff has suffered substantial economic damages and is entitled to relief as prayed for herein below.

## ELEVENTH CAUSE OF ACTION

### Concealment

### (Defendants MacDougall, Leong, Barlow, Cherise, and Julien)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

41.    Defendants' conduct, as alleged herein, constitutes intentional concealment of material facts in violation of California Civil Code section 1710(3), which Defendants had a duty to disclose due to their fiduciary relationships with Plaintiff and which caused direct and substantial economic harm to Plaintiff. Defendants knew of and deliberately withheld these material facts with the intent to deceive Plaintiff and gain an unfair economic advantage. As a direct and proximate result, Plaintiff has suffered significant damages and is entitled to compensatory, consequential, and punitive damages as prayed for herein below.

## TWELFTH CAUSE OF ACTION

### Constructive Fraud

### (Defendants MacDougall, Leong, Barlow, Cherise, and Julien)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

42.    Defendants' conduct, as alleged herein, constitutes constructive fraud in violation of California Civil Code section 1573, arising from their egregious breach of fiduciary duties, systematic abuse of confidential relationships, and deliberate exploitation of their positions of trust for substantial personal financial gain while knowingly concealing material facts from Plaintiff in violation of their duty of full disclosure. As a direct and proximate result of Defendants'

13

constructive fraud, Plaintiff has suffered substantial economic damages and is entitled to relief, including punitive damages, as prayed for herein below.

## THIRTEENTH CAUSE OF ACTION

### Unjust Enrichment

### (All Defendants)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

43.    Defendants' conduct, as alleged herein, constitutes unjust enrichment through their wrongful receipt and retention of benefits rightfully belonging to Plaintiff, including but not limited to misappropriated funds, diverted business opportunities, and converted assets. Principles of equity and justice require disgorgement of all profits, benefits, and advantages wrongfully obtained by Defendants at Plaintiff's expense. As a direct result of Defendants' unjust enrichment, Plaintiff has suffered substantial financial injury and is entitled to complete restitution and other relief as prayed for herein below.

## FOURTEENTH CAUSE OF ACTION

### Misappropriation of Trade Secrets

### (Defendants MacDougall, Leong, Barlow, Cherise, and Julien)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

44.    Defendants' conduct, as alleged herein, constitutes willful and malicious misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act, Civil Code section 3426.1 et seq., and the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., including but not limited to the unauthorized acquisition, disclosure, and use of CDA's confidential information, proprietary business methods, customer lists, pricing strategies, and other trade secrets for Defendants' economic benefit. As a direct and proximate result, Plaintiff has suffered actual losses and Defendants have been unjustly enriched, entitling Plaintiff to damages, exemplary damages, and reasonable attorney's fees pursuant to Civil Code section 3426.3.

## FIFTEENTH CAUSE OF ACTION

### Unfair Competition

### (Defendants MacDougall, PRS, and PROPS)

14

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

45. Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices in violation of Business and Professions Code §§ 17200 et seq., 17500 et seq., specifically including: (1) systematic misappropriation of trade secrets, (2) deceptive business practices through false statements to stakeholders and partners, and (3) anti-competitive conduct through improper use of confidential information designed to compete with unfairly and damage Plaintiff's business. As a direct result of these violations, Plaintiff has suffered substantial competitive harm, lost business opportunities, and economic damages, entitling Plaintiff to injunctive relief, restitution, disgorgement of profits, and all other available remedies as prayed for herein below.

## SIXTEENTH CAUSE OF ACTION

### Violation of California State False Claims Act

### (Defendant MacDougall)

Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

46. Defendants' conduct, as alleged herein, constitutes knowing, intentional, and malicious violations of the California False Claims Act, Government Code §12651(a)(1)-(7), including specifically the submission of false claims for payment, making false records material to false claims, and conspiring to defraud the state through false claims, demonstrating a pattern of systematic fraud against the state, including but not limited to submitting false claims, making false records and statements, and conspiring to defraud the state. As a direct and proximate result of these willful violations, Plaintiff has suffered substantial injuries and damages and is entitled to all available remedies and relief as prayed for herein below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. That the Court declare Defendants' conduct, as alleged herein, to be unlawful, fraudulent, and in willful violation of their statutory and fiduciary duties.

2. That the Court permanently enjoin Defendants, their agents, employees, successors, and all persons acting in concert with them from continuing to engage in the conduct alleged herein to be

15

unlawful, and further order them to immediately return all misappropriated funds, property, and confidential information to Plaintiff.

3.      That the Court order Defendants to pay compensatory damages of no less than damages in an amount to be proven at trial, but no less than $1,407,790 for wrongfully diverted grant award compensation and $2,500,000 for converted timber credits, plus consequential damages, lost profits, future lost business opportunities, reputational damages, damages for loss of goodwill, pre-judgment interest at the maximum rate permitted by law, and any additional damages proven at trial. These amounts are based on currently available information and Plaintiff reserves the right to amend these figures as additional evidence of damages is discovered.

4.      That the Court order Defendant employees and contractors to pay restitution in an amount equal to their total compensation, including salary, benefits, bonuses and other remuneration, for all time spent conducting unlawful activity while in breach of their fiduciary duties to Plaintiff, plus disgorgement of any profits or benefits obtained through such unlawful activity, together with pre-judgment interest at the maximum rate permitted by law.

5.      That the Court order Defendants to pay exemplary damages pursuant to California Civil Code section 3294 for acting with malice, oppression, and fraud, as alleged herein, in an amount sufficient to punish Defendants and deter similar conduct in the future, but in an amount to be determined at trial based on the evidence of Defendants' conduct and financial condition, taking into account Defendants' financial condition and the degree of their misconduct.

6.      That the Court order Defendants to pay, Plaintiff's reasonable attorney's fees and costs pursuant to Civil Code § 3426.4, Government Code § 12652(g), Code of Civil Procedure § 1021.5, and all other applicable statutory and contractual provisions.

7.      That the Court order Defendants to pay all applicable statutory penalties, including but not limited to: (1) treble damages and civil penalties of up to $11,463 per violation under Government Code § 12651(a) of the California False Claims Act, (2) civil penalties of up to $2,500 per violation under Business & Professions Code § 17206, and (3) exemplary damages up to twice actual damages under Civil Code § 3426.3 for willful and malicious misappropriation of trade secrets.

8.      Such other and further relief, whether legal, equitable, or extraordinary, as the Court deems

16

just and proper under the circumstances of this case.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all triable issues, causes of action, and claims for which it has a constitutional, statutory, or other right to jury trial, including specifically all claims for compensatory damages, punitive damages, and monetary relief under Cal. Code Civ. Proc. § 592.

Date: May 30, 2025                                          DARYL REESE LAW GROUP PC


Daryl J. Reese
Attorney for Plaintiff
CALIFORNIA DEER ASSOCIATION

17